# In The
# United States Court Of Appeals
# For The Sixth Circuit

———— ◆ ————

## CASE NO: 24-3933

———— ◆ ————

# WILLIAM J. SHELTON,

*Plaintiff-Appellant,*

v.

# CUYAHOGA METROPOLITAN HOUSING AUTHORITY; GREGORY DREW, in his official and individual capacities,

*Defendant-Appellees.*

———— ◆ ————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO AT CLEVELAND

———— ◆ ————

## CORRECTED BRIEF OF THE APPELLANT
## ORAL ARGUMENT REQUESTED

———— ◆ ————

**LAWRENCE MAYS**
**Law Offices of Lawrence Mays**
**29325 Chagrin Blvd, Suite 305**
**Pepper Pike, Ohio 44122**
**(216) 208-1287**

*Counsel for Plaintiff-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant is an  individual and is not a corporation, nor a subsidiary or affiliate of a publicly owned corporation.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-x

STATEMENT IN SUPPORT OF ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     I.     COMPLAINT ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Shelton's Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     I.     THE FEDERAL DISCOVERY RULE APPLIES . . . . . . . . . . . . . . . 18

        A.    Under the Discovery Rule, A Claim Only Accrues When A
             Plaintiff Knows or Should Have Known of His Injury
             *and* the Defendant's Role in Causing that Injury . . . . . . . . . . 18

     II.     THE DISTRICT COURT ERRED IN DISMISSING DETAILED
           ALLEGATIONS THAT PLAINTIFF DID NOT KNOW UNTIL
           MARCH 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

A.      The District Court Ignored Specific, Plausible Allegations that Plaintiff Reasonably Did Not Know OF HIS CONSTITIUTIONAL CLAIM . . . . . . . . . . . . . . . . . . . . . . . . 21

III.    THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFF KNEW OR SHOULD HAVE KNOWN HIS INJURY WHEN HE WAS TERMINATED . . . . . . . . . . . . . . . . . . . . . . . . . . 22

A.      Plaintiffs Did Not and Could Not Know CMHA's Causal Role . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.      Claims Do Not Accrue Before a Plaintiff Could Know the Defendant's Complicity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1.      Appellate Caselaw Supports Delayed Accrual For Claims Against Institutions that Condoned Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

C.      The District Court Erred in Holding Plaintiffs' Claims Were Untimely, Even Though Plaintiffs Could Not Know of CMHA's Culpability Until 2022 . . . . . . . . . . . . . . . . . . . . . . . 31

D.      The District Court Erred in Relying on Finding That Plaintiff Had A Complete and Present First Amendment Retaliation Claim by the End of January 2021 . . . . . . . . . . . . . . . . . . . . . . 32

IV.     THE DISTRICT COURT ERRED IN REJECTING A LIMITATIONS TOLL BASED ON CMHA'S FRAUDULENT CONCEALMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

V.      THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT DEFENDANTS' REVISED DECLARATIONS WERE ADMISSIBLE BECAUSE THEY WERE SUBMITTED PRIOR TO THE COURT'S RULING ON SUMMARY JUDGMENT . . . . . . . . 34

VI      DEFENDANT CMHA IS LIABLE UNDER TITLE VII FOR RACE DISCRIMINATION (COUNT 7) . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        1.     Defendant CMHA is Liable Under Title VII for Retaliation (Count 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

VII    THE COURT SHOULD DECIDE WHETHER A TITLE VII PLAINTIFF MUST ESTABLISH A PRIMA FACIE CASE TO AVOID SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 44

VIII   A DISCRIMINATION PLAINTIFF SHOULD NOT BE REQUIRED TO ESTABLISH A PRIMA FACIE CASE OR TO USE THE *MCDONNELL DOUGLAS* METHOD OF ANALYSIS . . . . . . . . . . 47

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## TABLE OF AUTHORITIES

**<u>CASES</u>**                                                                    **<u>PAGE</u>**

*A.Q.C. ex rel. Castillo v. United States,*
  656 F.3rd  135 (2nd  Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.,*
  839 F.3rd  458 (6th  Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Armstrong v. Lamy,*
  938 F. Supp. 1018 (D. Mass 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Barrett v. United States,*
  689 F.2nd  324 (2nd  Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bishop v. Children's Ctr. for Developmental Enrichment,*
  618 F.3d 533 (6thCir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18, 32

*Bonds v. Cox,*
  20 F.3d 697 (6th  Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Brown v. VHS of Michigan, Inc.,*
  545 Fed. Appx. 368 (6th  Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cascone v. United States,*
  370 F.3rd  95 (1st  Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cataldo v. U.S. Steel Corp.,*
  676 F.3rd  542 (6th  Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chappell v. Rich,*
  340 F.3rd  1279 (11th  Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City of Aurora v. Bechtel Corp.*,
     599 F.2nd 382 (10th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*Cline v. United States*,
     No. 3:13-CV-776, 2016 WL 2653607 (M.D. Tenn. May 10, 2016) . . . . . . 31

*Coate v. Montgomery Cnty., Kentucky*,
     234 F.3d 1267 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Counts v. Kraton Polymers*,
     260 F. App'x 825 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Craft v. Vanderbilt Univ.*,
     18 F. Supp. 2d 786, 796 (M.D. Tenn. 1998) . . . . . . . . . . . . . . . . . . . . . 23, 29

*Cutter v. Ethicon, Inc.*,
     No.20-6040,2021 WL3754245 (6th Cir. Aug. 25, 2021) . . . . . . . . . . . . . 21

*DeNoma v. Hamilton Cty. Court of Common Pleas*,
     626 Fed. Appx. 101 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Doe 1 v. Baylor University*,
     240 F. Supp. 3d 646 (W.D. Tex. 2017), . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*EEOC v. Avery Dennison Corp.*,
     104 F.3rd 858 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Elam v. Menzies*,
     594 F.3rd 463 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fonseca v. Consol. Rail Corp.*,
     246 F.3d 5858 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gilmore v. Davis*,
     2006 U.S. App. Lexis 15241, 185 FED App. 0415N (6th Cir. 2006).22, 23,28

*Gregg v. Haw., Dep't of Pub. Safety*,
     870 F.3d 883 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Harris v. J.B. Robinson Jewelers*,
    627 F.3d 235 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Harrison v. Metropolitan Gov't*,
    80 F.3rd 1107 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Hensley v. Wester Chester Twp.*,
    1:21cv373 (S.D. Ohio Sep 30, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Hill v. A.O. Smith Corp.*,
    801 F.2nd 217 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 29

*Hinds v. Sprint/United Management Co.*,
    523 F.3rd 1187 (10th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Hogan v. United States*,
    42 F. App'x 717 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Arctic Express Inc.*,
    636 F.3d 781 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re FirstEnergy Corp. Secs. Litigation*,
    S. D. Ohio No. 2:20-cv-3785,
    2023 U.S. Dist. LEXIS 215521 (Nov. 29, 2023). . . . . . . . . . . . . . . . . . . . 36

*Jackson v. RKO Bottlers*,
    743 F.2nd 370 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Lozano v. Baylor Univ.*,
    408 F. Supp. 3d 861 (W.D. Tex. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Lutz v. Chesapeake Appalachia, L.L.C.*,
    717 F.3d 459 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Magnum v. Archdiocese of Phila.*,
    No. 06-cv-2589, 2006 WL 3359642 (E.D. Pa. Nov. 17, 2006),
    aff'd, 253 F. App'x 224 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Marsh v. Genentech, Inc.*,
  693 F.3rd 546 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*McIntyre v. United States*,
  367 F.3d 38 (1st Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Meriwether v. Hartop*,
  992 F.3rd 492 (6th Cir.2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mitchell v. Toledo Hosp.*,
  964 F. 2nd 577 (6th Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Moffat v. Wal-Mart Stores, Inc.*,
  624 Fed. Appx. 341 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Momenian v. Davidson*,
  878 F.3rd 381 (D.C. Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Moon v. Transport Drivers, Inc.*,
  836 F.2nd 226 (6th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Nat'l Credit Union Admin. Bd. v. Jurcevic*,
  867 F.3rd 616 (6th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nguyen v. City of Cleveland*,
  229 F.3rd 559 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Ouellette v. Beaupre*,
  977 F.3rd 127 (1st Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . 15, 24, 26, 28

vii

*Parsons v. CSX Transp., Inc.*,
    477 F. App'x 304 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Peters v. Lincoln Elec. Co.*,
    285 F.3rd  456 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Piotrowski v. City of Hous.*,
    237 F.3rd  567 (5th  Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 28

*Provenzano v. Lei Holdings, Inc.*,
    663 F.3rd  806 (6th  Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Redwing v. Catholic Bishop for Diocese of Memphis*,
    363 S.W.3d 436 (Tenn. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Reguli v. Russ*,
    109 F. 4th 874 (6th  Cir. 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Rollins v. Midland Steel Products Co.*,
    53 F.3rd  332 (6th  Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ross v. City of Dublin*,
    2016 U.S. Dist. LEXIS 169235,
    2016 WL 7117389 (S.D. Ohio Dec. 7, 2016) . . . . . . . . . . . . . . . . . . . . . . . 37

*Russo v. City of Cincinnati*,
    953 F.2d 1036 (6th Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schmitz v. NCAA*,
    122 N.E.3rd 80 (Ohio 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sharpe v. Cureton*,
    319 F.3rd  259 (6th  Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Smyer v. Kroger Ltd. P'ship I*,
    No. 22-3692 (6th  Cir. Mar. 8, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Snyder-Hill v. The Ohio State Univ.,*
    48 F. 4th686 (6th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stoleson v. United States,*
    629 F.2nd  1265 (7th  Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Taylor v. Sci. Applications Int'l Corp.,*
    3:12 C 00119 (M.D. Tenn. Apr. 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Texas Dep't of Community Affairs v. Burdine,*
    450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Butts,*
    40 F.4th 766 (6th  Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Kubrick,*
    444 U.S. 111 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States Postal Service Board of Governors v. Aikens,*
    460 U.S. 711 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Wilkes,*
    78 F.4th  272 (6th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Walton v. Powell,*
    821 F.3rd  1204 (10th  Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Wells v. Colo. Dep't of Transp.,*
    325 F.3rd  1205 (10th  Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Worthy v. Mich. Bell Tel. Co.,*
    472 F. App'x 342 (6th  Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

## STATUTES, RULES, AND CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1746 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 2000e-3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Fed. R. App. P. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

US Constitution, Amendment I . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Oral argument is warranted because this case involves multiple issues of immense public import. Plaintiff seeks to hold the largest public housing employer accountable under the First Amendment for terminating a member of the public for its' viewpoint discrimination. The District Court dismissed this case holding that Plaintiff's claim was untimely notwithstanding the federal discovery rule, which delayed accrual of the First Amendment claims, and state law equitable tolling for fraudulent concealment.

This case raises important questions of federal law about applying delayed accrual where a Plaintiff did not know he was being constitutionally injured because the injury occurred under the guise of employer rules and policy violations.

Oral argument will aid the Court in parsing the specific factual allegations in this case detailing Plaintiff, who did not know he was injured under the Constitution, the context and basis for that lack of knowledge. This case also raises important questions of federal law about when a Constitutional claim accrues against a public employer. Does it accrue when the plaintiff has a factual basis to allege fault on the part of the employer or does it accrue (as the District Court held) when a plaintiff knows or alleges he was terminated because of his race?

# STATEMENT OF JURISDICTION

The District Court had original jurisdiction over Plaintiffs' claims against the Cuyahoga Metropolitan Housing Authority ("CMHA") under 28 U.S.C. §§ 1331 and 1343. Second Amended Complaint ("SAC"), R.13, PageID#162-189. The District Court issued an Opinion and Order ("Decision") granting Defendant's motion to dismiss or failure to state a claim on September 27, 2024, dismissing all claims. Decision, R.61, PageID#2801-2804. Plaintiffs timely filed a notice of appeal on October 27, 2024. Notice of Appeal, R.63, PageID#2842-2843. This Court has jurisdiction over the present appeal since Fed. R. App. P. 3(a) authorizes an appeal permitted by law as of right from a district of appeals and Appellant properly filed his notice of appeal as required by Fed. R. App. 4(a)(1).

# STATEMENT OF ISSUES

1.    Did the District Court improperly find that Plaintiff knew he was injured , even though Plaintiff alleged he did not know CMHA's First Amendment causation until Chief Gonzalez's arbitration testimony?

2.    Did the District Court erroneously hold that Plaintiff's mere knowledge that CMHA terminated him trigger accrual of Appellant's claims against CMHA?

3.    Did the District Court err in holding that none of Plaintiff's claims were tolled by fraudulent concealment, even though CMHA concealed and made

affirmative misrepresentations to Plaintiff about the legitimacy of its role in terminating Appellant?

## INTRODUCTION

Over and over CMHA told Shelton that five of his fifteen videos violated CMHA policies and regulations. Having skillfully hidden its First Amendment investigation of his videos, CMHA now seeks the ultimate legal reward, dismissal of this lawsuit. Sixth Circuit law permits no such thing.

The "statute of limitations begins to run" only once a "reasonable person knows, or in the exercise of due diligence should have known, *both* his injury *and* the cause of that injury." Appellant did not know he was constitutionally injured until after he was terminated. Plaintiff was duped by CMHA and consistently told that he violated CMHA policies and regulations. Plaintiff did not know *that CMHA* caused him a constitutional injury until March 2022.

The district court failed to address this allegation and lumped Plaintiff into a one-size-fits-all approach to a c c r u a l  a n d  granted dismissal. But well-plead complaint allegations matter on a motion to dismiss. This Court should v a c a t e ,  remand, and let the Plaintiff finally have his day in court.

**STATEMENT OF THE CASE**

# I.    COMPLAINT ALLEGATIONS

## A.    Shelton's Facts

At the time of his termination on January 29, 2021, Shelton was a patrolman in the Cuyahoga Metropolitan Housing Authority (CMHA) Police Department. Shelton's employment with CMHA consists of two separate time periods. He began his employment on 2016 and worked until 2017 when he left for a new position with the Sandusky PD. He had a good disciplinary record and had been an effective police officer for CMHA for the entire years of his CMHA employment.  He was rehired after he left the Sandusky PD and was welcomed back with CMHA after just 30 days.  He made the SWAT team and worked in the Detective Bureau.  He was well-liked and respected.  He also made rap music, selling it on Itunes, and videos that he posted on YouTube.  His music and videos never referenced police work, and he never used any uniform components or CMHA resources in making or distributing his music.  All of his musical activity was published or posted under the name "TB". Shelton shared his music with many co-workers and made no effort to hide his musical passion.  He regularly spoke about his music with his immediate supervisor, Sergeant John Smiddy.   The Chief of CMHA's Police Department, Andres Gonzalez,  was aware of Shelton's musical talents and once requested that he rap at a CMHA event.   Shelton declined, stating that he thought his music was not appropriate for a mixed crowd at a CMHA block party.

Shelton was hired as a police officer with CMHA on February 25, 2016. (R. Doc. #34-1, PageID #565, 567). The Plaintiff left employment with CMHA in the spring/summer of 2017, for a brief period, then returned to CMHA employment on August 14, 2017. (R. Doc. #34-1, PageID #589). The Plaintiff was a competent, effective officer with the CMHA who received positive performance evaluations. (R. Doc. #46-1, PageID #1759, 1966). Shelton's co-workers and command staff found no problem with the his treatment of the public and he was never accused of using too excessive force. (R. Doc. #46-1, PageID #1924, 1966).

Plaintiff is also a rap artist. Plaintiff's co-workers and command staff with CMHA, including the CMHA Chief of Police, have long been long aware that Shelton is a rap artist and that he creates music. (R. Doc. #46-1, PageID #1807-1809, 1895, 1917-1925, 1935-1936, 1938-1942). In fact, John Smiddy, Shelton's immediate supervisor at CMHA, was very supportive of his rap endeavors. (R. Doc. #46-1, PageID #1940-1942). The Plaintiff is and was proud of his music and openly shared same with his co-workers and command staff. (R. Doc. #46-1, PageID #2002). The CMHA Chief even previously asked the Plaintiff to perform his rap music at an event. (R. Doc. #46-1, PageID #2002-2003). When Plaintiff told the Chief that his music was vulgar, the Chief responded, "Don't worry, we'll bleep it out." (R. Doc. #46-1, PageID #2002-2003).

Importantly, Plaintiff is an artist, and the lyrics of his rap songs are not meant to be taken at face value but are instead metaphors and similes and represent play acting, such as in a movie. (R. Doc. #46-1, PageID #1999-2000). Plaintiff creates his music to be listened to and experienced by a large audience, creating same "based on what the people want." (R. Doc. #46-1, PageID #2008-2009). As a rap artist, the Plaintiff posted his songs under the moniker "TB", and not his given name. (R. Doc. #46-1, PageID #2005). Plaintiff never held himself out as a police officer nor did he ever wear a uniform, or even any part of a uniform, in his music videos. (R. Doc. #46-1, PageID #2006). Plaintiff does not convey that he is a law enforcement officer in his music videos. (R. Doc. #46-1, PageID #2008-2009). In fact, the Chief of CMHA admitted multiple times that the Plaintiff depicted in the music videos bore no resemblance to the Plaintiff he knew as a police officer. (R. Doc. #46-1, PageID #1791-1792).

On September 18, 2020, Plaintiff provided a written complaint of workplace harassment to the CMHA Human Resources Department. (R. Doc. #34-1, PageID #665-668; R. Doc. #34-19). Plaintiff's workplace harassment complaint detailed allegations of long-standing discrimination and racial discrimination directed at the Plaintiff by Defendant CMHA and Defendant Drew. (R. Doc. #34-1, PageID #680- Doc. #34-19). The workplace harassment complaint detailed how the Defendants CMHA and Drew directed racial remarks at the Plaintiff and how the Plaintiff was

disciplined and treated differently than other similarly situated CMHA employees because of his race. (R. Doc. #34-19). The workplace complaint further detailed how the Defendant CMHA prohibited the Plaintiff from wearing a "Black Lives Matter" face black. (R. Doc. #34-1, PageID #878-884; R. Doc. #34-19). CMHA prohibited the Plaintiff from wearing the "Black Lives Matter" face mask specifically because it was a political statement that CMHA did not want to represent. (R. Doc. #34-1, PageID #878-884; R. Doc. #34-19; R. Doc. #46-1, PageID 2045-2051). However, CMHA allowed other officers to wear masks depicting different political statements, such as "Blue Lives Matter". (R. Doc. #34-1, PageID # 878-884; Doc. # 34-19; R. Doc. #46-1, PageID #2045-2051). Further, the workplace complaint detailed how Defendant Drew previously told the Plaintiff, "sometimes I don't think you know your place", and how, after the Plaintiff submitted a written request to exit the SWAT team, Defendant Drew told him, "It doesn't look good when you write an angry memo because it sticks in your file and it's basically a battle you will not win." (R. Doc. #34-19, PageID #1016, 1020).

After the Plaintiff submitted his workplace harassment complaint, Defendant CMHA and Defendant Drew targeted Plaintiff for employment termination. Although CMHA and Chief Gonzalez long knew of Plaintiff's music and rapping activities, Lieutenant Drew brought the Plaintiff's music videos to the attention of the CMHA Chief, and the Chief then took the matter to Human Resources on

September 18, 2020. (R. Doc. #34-1, PageID # 665-678; R. Doc. #46-1, PageID #1625, 1807-1809. At the time Shelton submitted his workplace complaint to Human Resources, he did not know that CMHA Chief had complained to Human Resources about his music videos on that same day. (R. Doc. #34-1, PageID # 674).

Defendants actions were in retaliation against Shelton for his workplace complaint and Defendants worked to improperly terminate his employment, initially placing him on administrative leave on October 7, 2020. (R. Doc. #34-1, PageID #750, 908). Thereafter, in late December/early January (2020-2021) Shelton participated in a Zoom conference concerning his placement on leave and was informed that five (5) of his music videos were of concern to the CMHA Chief. (R. Doc. #34-1, PageID #750-755). Then on January 21, 2021, Plaintiff's employment was officially terminated due to five (5) of his music videos. (R. Doc. #34-1, PageID #821-823).

Importantly, Defendants vetted multiple of Plaintiff's music videos and were advised that some of the videos could be considered matters of public concern, and that therefore the Defendants should not use said videos in any employment discipline. (R. Doc. #46-1, PageID #1770, 1801-1802). As such, Defendants focused on investigating five (5) of the videos, looking for any CMHA policy or procedure violations they could link to the videos to justify termination. (R. Doc. #46-1, PageID #1770). Importantly, during Plaintiff's pre-disciplinary conference, he was

not informed that the Defendants conducted this First Amendment assessment. Likewise, Shelton was never asked to take down or limit access to his videos for which Defendants decided to terminate his employment.

As Plaintiff's termination letter indicates, the Defendants ultimately settled on terminating the Plaintiff's employment for alleged violations of the CMHA Personnel Policies and Procedures Manual (Discipline Policy), Article B-1(8) Prohibited Conduct, Items: B-3: Disrespectful or poor treatment of co-workers, supervisors, CMHA Residents, and/or members of the public; B-15: Negligent or improper conduct leading to damage of CMHA, resident, or public property; B-16: Insubordination or other disrespectful conduct; Item B-23: Discourtesy to customers, residents, and/or co-workers; and B-32: Conduct unbecoming of an employee in public service. (R. Doc. #34-43, PageID #1081). The policies and procedures the Defendants used to terminate Plaintiff's employment are unclear, such that Shelton, his supervisor, nor his coworkers were aware that his rap music was a potential violation thereof. (R. Doc. #46-1, PageID #1896-1898, 1925, 2004, 2045-2050; In fact, not even Plaintiff's immediate supervisor with CMHA was aware that Plaintiff's hobby as a rap artist could violate the CMHA policies and procedures. (R. Doc. #46-1, PageID #1958-1961). After Defendants unlawfully terminated the Plaintiff's employment, he filed a grievance, alleging his employment termination was issued without just cause. (R. Doc. #34-1, PageID #825). The

arbitrator found in favor of the Plaintiff and that under the just cause standard, Shelton should be reinstated in his employment with CMHA. (R. Doc. #34-1, PageID #835). The Plaintiff's employment with CMHA was then reinstated on November 28, 2022. (R. Doc. #34-1, PageID #835).

Over several years, Shelton had concluded that the SWAT team commander, Lt. Gregory Drew, was racist. Shelton had evidence supporting his conclusion, but his prior attempts to address what he felt was discrimination against him had not worked. In October of 2021, he filed a complaint with the CMHA HR Office asserting that Lt. Gregory Drew was discriminating against him and had refused to let him leave the voluntary SWAT team when he requested to be let off the team. Shelton had requested to be released from the team over a year before the complaint was issued. Drew had informed him that he could not quit the team and had refused to forward his request up the chain of command.

On the same day that Shelton filed his HR complaint, Drew informed Chief Gonzalez that he had a problem with the rap videos on YouTube. Drew had known about the videos and the rap music by Shelton for years, but, coincidentally, he chose to claim it was a disciplinary issue on the very day that Shelton filed a racial discrimination complaint against him. Drew claimed that there were people in the department that were offended by the videos but never identified a single person

who complained. During the "investigation" of the videos no complaining employee of the department was ever identified.

Shelton was immediately placed on administrative leave. Drew was not. After an investigation CMHA determined that Drew had not discriminated against Shelton but determined that Shelton had committed a termination level offense by making and publishing music videos that CMHA believed could damage the reputation of CMHA and rendered Shelton unfit for duty. Shelton forwarded his EEO complaint to the EEOC and grieved his termination. At a grievance hearing the Chief stated that he fired Shelton in order to let him pursue his dream of being a rich and famous rap star.

In the instant case, CMHA ignored its own progressive discipline policy and the CBA by terminating Shelton without any warning for making and posting rap videos under the name TB. The key fact about immediate termination offenses is that they must be the type of misconduct that always results in termination. CMHA does not have an outright prohibition on employees or its' police officers making music videos or posting those videos on social media.

CMHA Had No Rules That Prohibited
the Actions of Shelton

CMHA has policies that recognize that employees have the right to speak their opinion on social media and makes recommendations that should be followed to prevent the personal opinions of the employees from being taken as the opinion of

CMHA. The CMHA Personnel Policies and Procedures Manual provides that "CMHA recognizes that employees may engage in social networking when off-duty. Social networking, for the purposes of this policy, is the employee posting information on his or her own website, on someone else's weblog, journal or diary on the Internet. Social networking includes any other form of posting information on the Internet such as blogging, tweeting, personal website, bulletin board, chat rooms, etc."

The policy goes on to state "employees who engage in social networking should be mindful that their postings, even if done off-premises and off-duty, could have an adverse effect on CMHA's legitimate business interests. For example, the information posted could be the CMHA's trade secret or confidential business information. In addition, some readers may view the employee as a de facto spokesperson for CMHA." *Id.* In order to ameliorate these concerns CMHA does not prohibit social media activity, they simply recommend that employees state that the opinions in question are not those of the Authority, and avoid any comments disparaging CMHA, its partners, affiliates, customers, vendors, or competitors. *Id.* p. 27. The policy also instructs employees to avoid using CMHA logos or proprietary graphics. Id. Finally, the policy does attempt to discourage discussions of personal work-related issues that are more appropriately discussed with HR. *Id.*

In the instant case, Shelton's TB postings were made and posted while Shelton was off-duty using his own computer equipment and he used no CMHA graphics or logos. Shelton identified himself in his music videos only as TB and no witness appeared that asserted or described any negative impact of the TB videos on CMHA. R. Doc.# 50, Page ID 2260. The only way to connect TB to Officer Shelton was to recognize him in the videos. There is no evidence that this ever occurred and no reason to believe that it ever would. Any damage to CMHA's mission, values or business is not based on any evidence and therefore strictly hypothetical. CMHA did not and cannot prove any actual disruption caused by the TB videos.

There Is No Nexus Between CMHA and the Music of TB

Even if these videos were offensive to certain members of the public or fellow employees, there was no evidence that the general public could connect the rap stylings of TB and Officer William Shelton of the CMHA, SWAT team, or that any member of the public had ever done so. R. Doc#50 PageID 2260-2264.

Moreover, no employee or resident testimony was presented that established who happened upon the videos in question and was offended. R. Doc#50 PageID 2260-2264. The fact that certain HR employees and police administrators viewed the videos during the disciplinary process and claimed offense is unsupported by the evidence. Rap/Hip Hop is a very, if not the most, popular form of music currently. The genre, like most popular music since jazz is disturbing to the generation prior to

the one that made it popular. R. Doc. # 53, PageID #2318-2328; R. Doc.#48 PageID 2140-2256. Yet it sells better than any other genre. So, the "type" of music cannot be considered offensive to the general public.

The only way the HR witnesses were able to find the music in order to be offended was because they were led to it by the Chief, who was led to it by Lt. Gregory Drew. Drew was obviously seeking it out, as there is no connection between Shelton and TB that would lead one to the other unless previously known. Sgt. Smiddy testified that Drew would have known of Shelton's music because it was a subject of general knowledge among officers. (R.Doc. # 46-3 PageID#1942-1944) Officer Field also testified that everyone in the department knew about Shelton's videos. (R.Doc.# 46-3 PageID#1922-1936).

Moreover, the fact that Shelton's immediate supervisor knew of the videos and never warned Shelton that they might be a problem suggests that the actual termination in this case is pretextual. Indeed, the timing of the complaint from Drew and the whole process of removing Shelton from the workplace via administrative leave was clearly intended to punish Shelton for complaining of his discriminatory treatment by Lt. Gregory Drew.

## II.    PROCEDURAL HISTORY

On September 27, 2024, the District Court issued a 40-page opinion dismissing the case, No. 1:23-cv-483 (N.D. Ohio), R.Doc. 61 PageID# 2801-2840. The Decision entered judgment for CMHA—lumping all Plaintiff's claims together despite different factual allegations. It did not discuss the many differences between the complaint or engage with Plaintiff's allegations. This appeal followed. R. Doc # 63.

## SUMMARY OF THE ARGUMENT

A "statute of limitations begins to run" only once a "reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Snyder-Hill v. The Ohio State Univ.*, 48 F. 4th 686 (6th Cir. 2022), rehearing en banc denied, 54 F. 4th 963 (6th Cir. 2022); *Bishop*, 618 F.3rd at 536. A plaintiff "cannot maintain an action before she knows she has one." *City of Aurora v. Bechtel Corp.,* 599 F.2nd 382, 387-88 (10th Cir. 1979). What a plaintiff knew or should have known "is a question for the trier of fact." *In re Arctic Express Inc.*, 636 F.3rd 781, 803 (6th Cir. 2011). The Trial Court's decision ignored these basic Sixth Circuit precepts and must be reversed.

The District Court erred in citing but ignoring Plaintiff's allegations, focusing instead on the *EEOC charge and what Shelton knew on January 29, 2021*. Whether a plaintiff has knowledge triggering claim accrual is a classic jury factual

question. *In re Arctic Express Inc.*, 636 F.3rd at 803. The District Court erroneously made these factual determinations in CMHA's favor at the pleadings stage.

It further erred in holding irrelevant Plaintiff's lack of knowledge about Defendant *CMHA*'s role in causing his c o n s t i t u t i o n a l injury. Without knowledge that CMHA had submitted all of his videos to an outside firm for First Amendment assessment, Plaintiff would have had no basis to bring a constitutional claim against CMHA. The District Court held that Plaintiffs' claim accrued when CMHA terminated him on January 29, 2021 or at the latest when he foiled his EEOC charge on February 17, 2021, merely because Plaintiff knew or had knowledge of his termination. Plaintiff's claims did not accrue until 2022, when he had evidence of CMHA's *own* wrongdoing, as the First, Second, and Fifth Circuits have held in analogous circumstances. *Ouellette v. Beaupre*, 977 F.3rd 127 (1st Cir. 2020); *Barrett v. United States*, 689 F.2nd 324, 330 (2nd Cir. 1982); *Piotrowski v. City of Hous.*, 237 F.3rd 567, 577 (5th Cir. 2001).

Finally, the District Court erred in denying Plaintiff the benefit of Ohio's equitable tolling for fraudulent concealment. The District Court did not dispute that Plaintiff plead that h e w a s n o t a w a r e o f CMHA' First Amendment

assessment of all his videos and its role in enabling his injury. It erred in finding that CMHA's affirmative misrepresentations were immaterial because Plaintiff knew CMHA terminated him on January 29, 2021.

## STANDARD OF REVIEW

This Court reviews *de novo* a District Court's Rule 12(b)(6) dismissal. *Marsh v. Genentech, Inc.*, 693 F.3rd 546, 549 (6th Cir. 2012).

A Rule 12(b)(6) motion relying on an affirmative defense such as untimeliness cannot be granted unless "*the plaintiff's own allegations* show that a defense exists that legally defeats the claim for relief." *Cataldo v. U.S. Steel Corp.*, 676 F.3rd 542, 554–55 (6th Cir. 2012) (emphasis added).

This Court "must reverse the district court's dismissal unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Meriwether v. Hartop*, 992 F.3rd 492, 498 (6th Cir. 2021) "Because the statute of limitations is an affirmative defense, the burden is on the Defendant to show that the statute of limitations has run," including when the claim accrued. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3rd 459, 464 (6th Cir. 2013).

Summary judgment is only appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED.

R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041-42 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When there are disputed issues of material fact, summary judgment should be denied. See *Rollins v. Midland Steel Products Co.*, 53 F.3rd 332 (6th Cir. 1995).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *DeNoma v. Hamilton Cty. Court of Common Pleas*, 626 Fed. Appx. 101, 104 (6th Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

The Court has warned that, at the summary-judgment stage, a plaintiff need only <u>rebut</u> the employer's proffered rationales to carry her burden. Not <u>disprove</u> them. *Moffat v. Wal-Mart Stores, Inc.*, 624 Fed. Appx. 341, 348 (6th Cir. 2015). Therefore, courts should exercise caution in granting summary judgment once a plaintiff has made a prima facie case and a showing of pretext because an employer's true motivations are difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage. *Id*.

## ARGUMENT

## I. THE FEDERAL DISCOVERY RULE APPLIES

### A. Under the Discovery Rule, A Claim Only Accrues When A Plaintiff Knows or Should Have Known of His Injury *and* the Defendant's Role in Causing that Injury

Section 1983 is silent on the statute of limitations. When a federal statute is silent,"the action[] accrue[s] and the statutory period begins to run according to federal law." *Bishop*, 618 F.3d at 536-37. As this Court has held repeatedly, "[t]he general federal rule is that 'the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, *both* his injury *and* the cause of that injury'" *Id*. (emphasis added); *Fonseca v. Consol. Rail Corp*., 246 F.3d 585, 588 (6th Cir. 2001) (same); *Coate v. Montgomery Cnty., Kentucky*, 234 F.3d 1267, at *3 (6th Cir. 2000)(prisoner's § 1983 claim did not accrue until cancer diagnosis because "existence of colon cancer is not obvious" to patient); *Parsons v. CSX Transp., Inc*., 477 F. App'x 304, 305 (6th Cir. 2012) (jury properly instructed claim accrued on knowledge of both injury and causation); *Hogan v. United States*, 42 F. App'x 717, 724-25 (6th Cir. 2002) (FTCA claim accrued when plaintiff knew of "injury" and "cause"—that property damage was from "metal sold to him by the government").

This "discovery rule" furthers justice: "To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped

you of your remedy,' makes a mockery of the law." *City of Aurora*, 599 F.2nd at 387-88.

Other circuits, including the First, Second, Fifth, Ninth, Eleventh, and D.C. Circuits, agree with the Sixth Circuit: a statute of limitations does not accrue until the plaintiff knows both of (1) "[t]he existence of the injury;" *and* (2) "the connection between the injury and the defendant's actions." *Piotrowski*, 237 F.3rd at 576; *see also Momenian v. Davidson,* 878 F.3rd 381, 388 (D.C. Cir. 2017) ("cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing"); *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) ("The general common law principle is that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action *and* the cause of that injury." (emphasis added)); *A.Q.C. ex rel. Castillo v. United States*, 656 F.3rd 135, 140 (2nd Cir. 2011) (claim accrues at the time when, "with reasonable diligence," the plaintiff "has or . . . should have discovered the *Antitrust Litig.,* 436 F.3d 782, 789 (7th Cir. 2006) (under the discovery rule, the statute of limitations does not begin running until the plaintiff discovers that he has been injured *and* who caused the injury); *Cascone v. United States*, 370 F.3rd 95, 104 (1st Cir. 2004) (must know or have reason to know of the fact of injury *and* the injury's causal connection); *Chappell v. Rich*, 340 F.3rd 1279, 1283 (11th Cir. 2003)

(claim does not "accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered an injury that forms the basis of their complaint *and* (2) who has inflicted the injury" (emphasis added)).

The Supreme Court has also recognized that mere knowledge of the existence of the injury—without knowledge of who caused the injury—is insufficient for accrual, holding that the statute of limitations does not "accrue[]" where "the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *United States v. Kubrick*, 444 U.S. 111, 113, 122 (1979).

In this case, Shelton did not know CMHA's causal role in his constitutional injury under the First Amendment because it was shielded from him until March 2022.

## II. THE DISTRICT COURT ERRED IN DISMISSING PLAUSIBLE ALLEGATIONS THAT PLAINTIFF DID NOT KNOW UNTIL MARCH 2022.

Notwithstanding Plaintiff's allegations, the District Court held as a matter of law that Plaintiff knew he was terminated for posting YouTube videos on January 29, 2021. Decision at 11, R.61 at PageID # 2811. The Court reached this conclusion by incorporating Plaintiff's EEOC charge of race discrimination.

The District Court did not accept Plaintiff's allegations as true. The court ignored that it is *defendant's* burden to show the claim accrued "before the relevant

time period, not the [plaintiff's] burden to plead around the possibility." *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3rd 616, 625 (6th Cir. 2017).

The District Court erroneously resolved on the pleadings what Plaintiff did and did not know, but "it is the jury's role to resolve any disputes of fact, including disputed inferences, as to when a plaintiff discovered or should have discovered his cause of action." *Cutter v. Ethicon, Inc.*, No. 20-6040, 2021 WL 3754245, at \*4 (6th Cir. Aug. 25, 2021) (reversing grant of summary judgment); *Elam v. Menzies*, 594 F.3rd 463, 470 (6th Cir. 2010) (same).

### A.   The District Court Ignored Specific, Plausible Allegations that Plaintiff Reasonably Did Not Know His Constitutional Claim

Plaintiff alleged he first became aware of his constitutional claim in March 2022 upon hearing the arbitration testimony of Chief Gonzalez. The District Court cited but ignored this allegation, as if it did not exist. The Trial Court then proceeded to look beyond the complaint and incorporated his EEOC charge against CMHA which was based upon race and retaliation.

The point is not that Plaintiff "did not realize the extent and cause of his constitutional injury until shortly before filing suit." Decision at 10, R.197 at 1510. Rather, Plaintiff *did not know he was injured under the Constitution* by CMHA. *See* App1, R.133-1 *passim*.

Each of these factors is highly specific, posing "a question for the trier of fact to resolve." *In re Arctic Express Inc.*, 636 F.3rd at 803. A jury must evaluate Plaintiff's credibility, as to whether he knew CMHA had constitutionally injured him. The District Court did not and could not evaluate Plaintiff's credibility. The court cited but failed to analyze this allegation. Yet, it assumes that because he filed an employment discrimination charge, he had knowledge of his constitutional injury.

## III. The District Court Erred in Finding That Plaintiff Knew or Should Have Known His Injury When He Was Terminated

The District Court held that because Plaintiff knew CMHA caused Plaintiff's race and retaliation injuries under Title VII, he must also have known CMHA caused his constitutional injury as well. That is incorrect as a matter of law. Like the Trial Court, Appellees are confused because they conflate facts with claims under the discovery rule.

For example a plaintiff can have full knowledge of the fact she purchased securities from a defendant and not know of her claim for fraud until years later. *Gilmore v. Davis*, 2006 U.S. LEXIS 15241. "Although the facts clearly demonstrate that Gilmore knew of the possible similarities between the two songs and directed her attorney to investigate, those facts do not prove as a matter of law that she discovered her claims. The discovery rule instructs that a cause of action accrues not because of knowledge of facts, but because of knowledge of the elements that make a lawsuit possible. Gilmore must have discovered her claim, not merely the facts

surrounding it—chiefly, the manner and means of the breach and the identities of the defendants."

*Gilmore* held that the District Court in light of the evidence improperly applied the discovery rule to dismiss the complaint as a matter of law. The Sixth Circuit also determined that the statute of limitations *cannot* run where facts about causation are in the control of the defendant. Id, at *8. Citing *Craft v. Vanderbilt Univ*., 18 F. Supp. 2d 786, 796 (M.D. Tenn. 1998) and *Hill v. A.O. Smith Corp*., 801 F.2nd 217, 224 (6th Cir. 1986) (emphasis added). In *Gilmore*, the Sixth Circuit emphasized that the discovery rule applies only when the plaintiff does not discover and reasonably could not be expected to discover that he or she had a right of action. The statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person was not put on inquiry.

### A.    Plaintiff Did Not and Could Not Know CMHA's Causal Role

A jury is entitled to credit Plaintiffs' testimony and CMHA's role and causal conduct. Taking these allegations as true, CMHA's statute of limitations defense fails.

A hypothetical plaintiff who knew he was injured and sought to sue CMHA pre-2022 would have failed. Any competent lawyer would have advised that it is not enough that he was terminated by CMHA on January 29, 2021for policy and rule violations. The lawyer would ask: "Did CMHA inform of you of their First

Amendment concerns?" "Did CMHA reveal to you that your videos were not protected by the First Amendment?" "Did CMHA share with you its' factual basis for making a First Amendment assessment of your videos?"

No reasonable inquiry by Plaintiff would have allowed him to answer affirmatively. *E.g.*, SAC ¶¶ 265-269 at 2035-36. Without answers to these questions, any potential constitutional claim was likely sanctionable. *See Stoleson v. United States*, 629 F.2nd 1265, 1270 (7th Cir. 1980) (accrual delayed where plaintiff "would have been informed quite correctly [by competent legal advice] that she had no claim against the Government"); *Ouellette*, 977 F.3d at 140 ("Any knowledgeable attorney that Ouellette consulted around the time of his alleged abuse . . . would not have advised him to file a lawsuit against [the municipal defendants] in the absence of additional information suggesting that they were also a cause of his injury.").

CMHA hid its' First Amendment assessment of all Shelton's videos: telling him his videos only violated CMHA policies and rules and regulations; never mentioning its' own constitutional assessment of his videos until the arbitration in 2022; never informing him that a majority of his videos were protected by the Constitution; never informing him that CMHA believed five videos were not constitutionally protected; never providing a written response to his Ohio Public Records request for all documents. Subterfuge but effective. That is until the

arbitration in March 2022 where Chief Gonzalez testified what really was going with CMHA's investigation of Shelton's YouTube videos.

Even if the Plaintiff did have reason to investigate CMHA's conduct at the time he was terminated, his efforts would have been futile. CMHA controlled access to information about its' investigation of Plaintiff's complaints and videos, the information was confidential, and CMHA's response to Shelton's public records inquiry makes clear that, when asked directly about Shelton's termination, it would lie or not respond at all. *See, e.g.*, *Merck & Co.*, 559 U.S. at 653 (once inquiry notice triggered, "limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation"); *Kubrick*, 444 U.S. at 122 (claim does not accrue because "the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain").

At minimum, the issues of what should have alerted Plaintiff to CMHA's role in his constitutional claim, and whether an investigation by the Plaintiff would have disclosed CMHA's role, are fact-intensive inquiries inappropriate for resolution on a motion to dismiss. *In re Arctic Express Inc.*, 636 F.3rd at 802; *Kehoe*, or judgment on the pleadings, 933 F. Supp. 2nd at 1016.

**B.**     **Claims Do Not Accrue Before a Plaintiff Could Know the Defendant's Complicity**

Courts throughout the country hold that when sexual abuse victims seek to hold institutions accountable for their own role in enabling abuse, the claim accrues when plaintiffs should know of the *institution's* misconduct, not when the victim knows he was terminated.  Plaintiffs' allegations are stronger than those in these cases, given the admissions by Shelton he could not have known that CMHA was complicit in hiding or not revealing. The District Court largely ignored the caselaw and the admissions.

**1.**     **Appellate Caselaw Supports Delayed Accrual For Claims Against Employers that Condoned Misconduct**

In *Snyder-Hill*, the Sixth Circuit held that "the discovery rule determines the accrual of Title IX claims." 48 F.4th at 701. The discovery rule provides that "the statute of limitations begins to run when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." Id. at 698.

On analogous facts, the First Circuit held that a plaintiff's sexual abuse claim against a police department did not accrue when he was abused. *Ouellette*, 977 F.3d at 140. Plaintiff Ouellette had been abused by a police officer as a teenager in the 1980s, complained to the police department contemporaneously, but only learned through social media in 2015 that the department knew the officer had abused

others. *Id.* at 130. He sued the police department under § 1983, alleging its official policy was to "tacitly condone[]" the officers' sexual misconduct *Id.* at 134. The district court dismissed the suit on summary judgment, holding that plaintiff's claims accrued at the moment of abuse.

The First Circuit reversed. A f t e r carefully analyzing delayed accrual jurisprudence, it reaffirmed that "pursuant to the federal discovery rule, accrual is delayed until the plaintiff knows, or should know, . . *both* the fact of his or her injury *and* the injury's likely causal connection with the putative defendant." *Id.* at 136. Only then can a plaintiff "take the necessary steps to take legal action to preserve his or her rights*." Id.* at 138. A jury could reasonably conclude that, when he was abused, plaintiff had no "reason to suspect that the [police department] was not doing its job, or worse, that it was covering up [the abuser's] conduct." *Id.* at 143.

The First Circuit distinguished FTCA c ases where an employer is liable under *respondent superior*, because under § 1983, a "constitutional tortfeasor's employment with a municipality or supervision by a superior state officer does not, on its own, give rise to a 'complete and present' § 1983 cause of action." *Id.* at 140. Plaintiff's knowledge and diligence were quintessential jury questions that could not be resolved even on summary

judgment. *Id.* at 145; *see also McIntyre v. United States*, 367 F.3d 38, 52, 55 (1st Cir. 2004) (victim's family's FTCA claim concerning 1984 murder did not accrue until 1998, when, due to press reports revealing the "causal connection between the government and her injury," family had "a reasoned basis to believe that it was the FBI that had leaked [victim's] identity as an informant").

*Ouellette* mirrors decisions from the Fifth and Second Circuits holding, outside the sexual abuse context, that a plaintiff's federal claim against the government accrues when he should have discovered that the *government* injured him—not when he discovered the injury. In *Piotrowski*, 237 F.3rd at 577, the Fifth Circuit held that a § 1983 claim against the City for "protect[ing]" a criminal who shot plaintiff did not accrue at the time of the shooting, but only when plaintiff learned "the causal connection between her injuries and [the City's] actions," *i.e.*, that the City "had actively protected and/or assisted [the criminal]." *Id.* In *Barrett v. United States*, the Second Circuit held it would be "illogical" to require plaintiff to bring § 1983 and FTCA claims "at a time when the Government's responsibility in the matter is suppressed in a manner designed to prevent the party, even with reasonable effort, from finding out about it." 689 F.2d at 330.

In *Gilmore v. Davis*, 2006 U.S. App. Lexis 15241, 185 FED App. 0415N (6th Cir. 2006), this Circuit observed that "In cases where facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very

difficult to obtain," the cause of action does not accrue, and the statute of limitations cannot run. *Craft v. Vanderbilt Univ*. 18 F. Supp. 2nd 786, 796 (M.D. Tenn.1998); see also *Hill v. A.O. Smith Corp*., 801 F.2nd 217, 224 (6th Cir. 1986).

In this case, Shelton did not know CMHA's causal role in his constitutional injury under the First Amendment because it was shielded from him by Defendant CMHA. Shelton's termination letter makes clear that he was terminated for violations of Defendant CMHA's Personnel Policies and Procedures Manual and CMHA Police Department Policies and Procedures; and Rules and Regulations. The termination letter does not mention First Amendment or that CMHA had conducted an outside First Amendment assessment of his videos. Nor were these considerations mentioned at Shelton's Pre-Disciplinary Conference on January 27, 2021. The termination letter also states that "[p]ursuant to the facts presented at the PDC and a review of other testimonial and documentary evidence, it has been determined that you violated the above-cited provisions...." CMHA never identified the other testimonial and documentary evidence. When Plaintiff sought discovery of other testimonial and documentary evidence, Defendant CMHA responded with the shield of attorney-client privilege.

In *Snyder-Hill*, the Sixth Circuit held that "the discovery rule determines the accrual of Title IX claims." 48 F.4th at 701. The discovery rule provides that "the statute of limitations begins to run when the reasonable person knows, or in the

exercise of due diligence should have known, both his injury and the cause of that injury." *Id*. at 698. Ordinarily, the "discovery rule" applies to establish the date on which the statute of limitations begins to run, i.e., the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action. This test is an objective one, and the Court determines "what event should have alerted the typical lay person to protect his or her rights." *Sharpe v. Cureton,* 319 F.3rd 259, 266 (6th Cir. 2003).

The court in *Doe v. Board of Education of Hononegah Community High School* explained that the notice that triggers claim accrual "must not be of harm but of governmental harm." 833 F. Supp. 1366, 1375-76 (N.D. Ill. 1993). Though plaintiff knew she was harmed by a schoolteacher, her claim against the school did not accrue without reason to "suspect that the school board or its administrators had been responsible in any way for the teacher's conduct." *Id*.

In *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017), plaintiffs alleged they could not "know of Baylor's alleged causal connection to their assaults until the spring of 2016, when media reports regarding the rampant nature of sexual assault on Baylor's campus first came to light." The court "accepted the allegations in the Complaint as true" and denied the motion to dismiss. *Id.* at 663. *Armstrong v. Lamy*, 938 F. Supp. 1018,1033 (D. Mass 1996) (no evidence plaintiff-student should have known that the acts and omissions of the "Municipal Defendants

were a proximate cause of his injury, even assuming that he knew he had been injured by [teacher]"); *Cline v. United States*, No. 3:13-CV-776, 2016 WL 2653607, at *7 (M.D. Tenn. May 10, 2016) (FTCA claim did not accrue until plaintiff had "sufficient" information about "wrong done" by *both* abuser and "government that may have been able to protect [victim] . . . but failed to do so").

### C. The District Court Erred in Holding Plaintiff's Claims Were Untimely, Even Though Plaintiff Could Not Know of CMHA's Culpability Until 2022

The District Court ignored that Plaintiff alleged he did not know that CMHA's concealed it's role in assessing all his videos as support for his termination. The District Court held it was enough that Plaintiff knew on January 29, 2021 that he was terminated by CMHA. That holding errs for several reasons.

First, without evidence, a plaintiff who attempted to sue CMHA at the time could not overcome Rule 11, let alone Rule 12(b)(6). *Supra id*.

Second, even if Plaintiff were on inquiry notice , no reasonable inquiry would have revealed a basis for a constitutional claim against CMHA. Neither the District Court nor CMHA have identified *any* facts an inquiry would have revealed. *Supra id*.

**D.    The District Court Erred in Finding That Plaintiff Had A
Complete and Present First Amendment Retaliation Claim
by the End of January 2021.**

The District Court did not consider the litany of cases cited above finding claims timely where the plaintiff had no basis to allege a Defendant's culpability.  R. DOC #61, Page ID # 2811.  T h e  District  Court's dismissal of Plaintiff's claims seemingly relied on its application and misreading of *Reguli v. Russ*, 109 F. 4th 874 (6th Cir. 2024). That was error. Reguli alleged in her complaint that she discovered her injury in about January 2020 <u>and</u> learned of her injury's cause at the same time. Additionally, tolling was not available to Reguli because she did not renew her tolling argument in the Court of Appeals.

**IV.    THE DISTRICT COURT ERRED IN REJECTING A
LIMITATIONS TOLL BASED ON CMHA'S
FRAUDULENT CONCEALMENT**

Regardless of when the statute of limitations accrued, CMHA's concealment, obfuscation, and fraud equitably tolled the statute for Appellant.

"When," as here, "the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are inconsistent with the federal policy underlying the cause of action." *Bishop*, 618 F.3rd  at 537.

Under Ohio law, equitable tolling applies "where  there is some conduct of the adverse party, such as misrepresentation, which excludes suspicion and prevents inquiry," to "conceal evidence of the alleged wrongdoing." *Lutz*, 717 F.3rd  at 474- 75

(fraudulent concealment where energy companies concealed miscalculation of Royalty payments). Appellant must have relied on the "misleading" "misrepresentation" to his detriment. *Lutz v. Chesapeake Appalachia, L.L.C.*, 807. App'x 528, 530 (6th Cir. 2020); *see Schmitz v. NCAA*, 122 N.E.3[rd] 80, 90 (Ohio 2018) (NCAA's failure to inform football player about "the risks of playing college football and to share material information about those risks" amounted to fraudulent concealment).

The District Court did not question CMHA's affirmative concealment and fraudulent misrepresentations. Yet, it rejected Plaintiff's tolling argument because Plaintiff was purportedly "aware of all the elements of his causes of action." Decision at 11, R.61at PageID # 2811.

However, Plaintiff was affirmatively misled about whether he was i n j u r e d a t a l l. And while Appellant on January 29, 2021 knew he was terminated by CMHA, knowing the employer is *not* enough for any plaintiff to bring a constitutional claim. *Supra* Argument III.A. CMHA concealed its knowledge of constitutional protection and its First Amendment assessment as a basis for Shelton's termination. Shelton, for example, could not have alleged these crucial facts as to how CMHA injured him as a matter of constitutional law.

Comparatively, courts toll claims against institutions that conceal sexual assault. *Lozano*, 408 F. Supp. 3rd at 900–01 (fraudulent concealment where

Baylor University "actively conceal[ed]," that football players committed sexual assault; victim's claim was "inherently undiscoverable" until public investigatory findings); *Redwing*, 363 S.W.3rd at 465 (equitable tolling where plaintiff abused by priest 30 years ago was "misled by the Diocese with regard to the Diocese's knowledge of Father Guthrie's history and propensity for committing sexual abuse"); *Magnum v. Archdiocese of Phila.*, No. 06-cv-2589, 2006 WL 3359642, at *12 (E.D. Pa. Nov. 17, 2006), *aff'd*, 253 F. App'x 224 (3rd Cir. 2007) (equitable tolling where plaintiffs in 2002 learned that archdiocese concealed priest abuse since the 1940s).

The Court should not reward CMHA for concealing its' role in Appellant's First Amendment claim. Whether and how CMHA fraudulently concealed facts, thereby preventing Appellant from learning of his constitutional injury" are classic "disputed factual questions" that should not be resolved on a motion to dismiss or judgment on the pleadings. *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3rd 458, 464 (6th Cir. 2016).

**V. THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT DEFENDANTS' REVISED DECLARATIONS WERE ADMISSIBLE BECAUSE THEY WERE SUBMITTED PRIOR TO THE COURT'S RULING ON SUMMARY JUDGMENT.**

Declarations are governed by 28 U.S.C. § 1746. An unsworn "declaration must comport to the following form: 'I declare ( or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" *Peters*

*v. Lincoln Elec. Co*., 285 F.3rd 456, 475 (6th Cir. 2002) (quoting 28 U.S.C. § 1746(2)). Specifically, the law establishes standards for when a declaration constitutes evidence:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same ( other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746. *Taylor v. Sci. Applications Int'l Corp*., 3:12 C 00119, 7 (M.D. Tenn. Apr. 22, 2013) ("Pursuant to 28 U.S.C. § 1746, litigants may submit declarations as evidence, instead of affidavits, "so long as those declarations are made under penalty of perjury, certified as true and correct, dated, and signed." *Worthy v. Mich. Bell Tel. Co*., 472 F. App'x 342, 343 (6th Cir. 2012); *Counts v. Kraton Polymers*, 260 F. App'x

825, 829 (6th Cir. 2008); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994). The Sixth Circuit has repeatedly held that district courts should not consider declarations that are technically deficient. *Worthy,* 472 F. App'x at 344; *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *Bonds*, 20 F.3d at 702.")

The Sixth Circuit has identified four mandatory elements to a declaration under 28 U.S.C. § 1746: (1) it must be signed, (2) it must declare its contents to be true, (3) it must acknowledge that it is under penalty of perjury, and (4) it must be dated. *In re FirstEnergy Corp. Secs. Litigation*, S. D. Ohio No. 2:20-cv-3785, 2023 U.S. Dist. LEXIS 215521 (Nov. 29, 2023), citing *Bonds v. Cox*, 20 F.3rd 697 (6th Cir. 1994) ("Although [the] additional affidavits were subscribed under penalty of perjury, they were undated. Given the explicit language of the statute, they must therefore be excluded from consideration.") (emphasis added).

28 U.S.C. § 1746 is clear: its requirements are mandated, while the wording of those requirements can be effectuated in multiple ways—so long as the requirements are expressed. In other words, each ingredient can be expressed in different ways, but the recipe for a sufficient declaration remains fixed and includes that a declarant expressly state that he or she is alleging the contents of the declaration to be true while acknowledging he or she risks the legal consequences of committing perjury.

Accordingly, failure to follow the statutory requirements is "damning to the purpose and utility of the document" because it "places the document outside the scope of what evidence a federal court can consider ... " *In re FirstEnergy Corp. Secs. Litigation*, S. D. Ohio No. 2:20-cv- 3785, 2023 U.S. Dist. LEXIS 215521 (Nov. 29, 2023). The deficiencies render the document just a document and not a declaration constituting evidence that a factfinder and a federal court can credit under 28 U.S.C. § 1746. Id at *22. "The requirements for a proper declaration under 28 U.S.C. § 1746 are neither onerous nor complicated." Id at *28. In *Ross v. City of Dublin*, described a party that filed a deficient 28 U.S.C. § 1746 declaration as "careless." No. 2: 14-CV-02724, 2016 U.S. Dist. LEXIS 169235, 2016 WL 7117389, at *8 (S.D. Ohio Dec. 7, 2016). They also fail to constitute a 28 U.S.C. § 1746 declaration.     Instead, these documents are merely unauthenticated copies of written statements. Although  required by the statute, neither statement declares that its contents are true and correct, nor do they acknowledge that it is "under the penalty of perjury," but "signed under penalty of perjury."

Here, Defendants purported declarations ( Lieutenant Gregory Drew, R. Doc.# 40-1, PageID # 1400,  John Smiddy, R. Doc.# 40-2, PageID# 1404, Chief Andres Gonzalez, R. Doc#40-3, PageID#1410, Ronaye Steele, R. Doc # 40-4, PageID#1460) cannot be admitted at trial because of their deficiencies nor should the revised declarations be considered on the record for purposes of summary

judgment. Specifically, nowhere do they state that the contents are true and accurate but now as revised they are.

A declarant can state falsehoods while recognizing he or she is under penalty of perjury because the declarant has not declared the statement to be true—but when the declarant declares a statement to be true while concurrently recognizing the consequence—by declaring him or herself to be under penalty of perjury—the recognition of the consequences of lying takes on real meaning as risk attaches.

The Sixth Circuit has explained that "[c]ourts avoid constructions of statues that would render Congress's chosen words superfluous. Instead, courts 'must give effect, if possible, to every clause and word of a statute.'" *United States v. Wilkes*, 78 F.4th 272, 280 (6th Cir. 2023) (quoting *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389, (2000)). Interpreting 28 U.S.C. § 1746 so that "true" and "under penalty of perjury" are two requirements with their own meanings honors that precedent. Thus construed, 28 U.S.C. § 1746 is clear: its requirements are mandated, while the wording of those requirements can be effectuated in multiple ways—so long as the requirements are expressed. In other words, each ingredient can be expressed in different ways, but the recipe for a sufficient declaration remains fixed and includes that a declarant expressly state that he or she is alleging the contents of the declaration to be true while acknowledging he or she risks the legal consequences of committing perjury.

Defendants' failure to comply with the explicit and mandatory language of statute is careless but a choice made by Defendants not once but four times with each declaration. Defendants thus rendered the declarations beyond the purview of this Court's discretionary authority.

Given that these declarations do not meet the standards to constitute a declaration under 28 U.S.C. § 1746, they are prejudicial as amended and accepted by the court and must necessarily be disregarded. How for example are the non-compliant declarations together with the amended declarations to be viewed on the record and at trial? The District Court had no discretionary authority to amend 28 U.S.C. § 1746 in prejudice to Plaintiff. As a result, it was error for the Court to credit any factual representations set forth therein to support Defendants' Motion for Summary Judgment.

## VI. Defendant CMHA is Liable Under Title VII for Race Discrimination (Count 7)

Generally speaking, a plaintiff in a race discrimination action "has the burden of proving by a preponderance of the evidence a prima facie case." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). After proving the existence of a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-3 (1973). If the defendant meets this burden,

Shelton must then show that the defendant's articulated reason is a pretext for discrimination. *Id. Nguyen v. City of Cleveland,* 229 F.3rd 559 (6th Cir. 2000).

Through the filing of his workplace harassment complaint, Shelton detailed the racial harassment and racial discrimination waged on him by the Defendants. The same day that Shelton filed his workplace harassment complaint, the Defendants sought to terminate Plaintiff's employment and as a pretext for doing so, began investigating his music videos for the purpose of imposing discipline. Though the Defendants had long known that Shelton was a rap artist and had even invited Shelton to perform his music at a CMHA function, the Defendants decided to use Plaintiffs music against him the very same day that Plaintiff alerted HR about the racial discrimination he faced.

That the Defendants used Plaintiff's music as a pretext to terminate his employment is further evidenced by the fact that they "vetted" his music for possible First Amendment protection. The Defendant forced a review of all Shelton's music videos in order to "weed out" what it determined as any blatant First Amendment protected speech. Following this vetting, the Defendants then selected the five music videos they felt were less entitled to First Amendment protection and used the videos as a pretext to terminate Plaintiff's employment.

The Trial Court dismissed Shelton's free speech and suppression claims, in part because police forces are special circumstances where discipline is needed since

speech can "threaten to undermine the functions of the organization." Gills v. Miller. The Trial Court then inconsistently stated to maintain a discrimination claim because Plaintiff cannot show a "shared supervisor" or "special circumstances". Deci, p.36. Yet, the Trial Court previously observed that police forces are "special circumstances" in regards to free speech. It would logically follow that because of the atypical need for discipline in a police force, the question of discriminatory treatment is not limited to a "shared supervisor", but the special circumstance to maintain discipline within the police force and potential discriminatory actions that may be taken within that framework. Accordingly, Shelton has shown discriminatory conduct by Defendant CMHA as a whole.

The overall facts in this case clearly demonstrate that Shelton was terminated for racially discriminatory reasons and that the Defendants' claimed reason, that being Shelton's music, is nothing but a pretext and attempted cover for the Defendants' unconstitutional and discriminatory conduct. Viewing the record evidence in a light most favorable to Plaintiff, there are without a doubt sufficient facts for a jury to decide in favor of Shelton.

## 1. Defendant CMHA is Liable Under Title VII for Retaliation (Count 8)

Title VII "prohibits retaliatory conduct by an employer when an employee engages in protected activity." *Brown v. VHS of Michigan, Inc.*, 545 Fed. Appx. 368, 373 (6th Cir. 2013); see also 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful

employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.") *Hensley v. Wester Chester Twp.*, 1:21cv373 (S.D. Ohio Sep 30, 2022).

In order to establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to Shelton; and (4) there was a causal connection between the protected activity and the adverse employment action. See *Harrison v. Metropolitan Gov't,* 80 F.3rd 1107, 1118 (6th Cir. 1996) (citing *Wrenn v. Gould,* 808 F.2nd 493, 500 (6th Cir. 1987)). To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had Shelton not filed a discrimination action. See *EEOC v. Avery Dennison Corp.,* 104 F.3rd 858, 861 (6th Cir. 1997); *Jackson v. RKO Bottlers,* 743 F.2nd 370, 377 (6th Cir. 1984). Although no one factor is dispositive in establishing a causal connection, evidence that Defendant treated Shelton differently from similarly situated employees or that the adverse action was taken shortly after Shelton's exercise of protected rights is relevant to causation. See *Moon v. Transport Drivers, Inc.,* 836 F.2nd 226, 230 (6th

Cir. 1987). The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met. See *Avery*, 104 F.3rd at 861.

Herein, Shelton has absolutely demonstrated that he engaged in protected activity: Shelton asserted his First Amendment rights to free speech on multiple issues. Further, the evidence is clear that the Defendants were aware that Shelton was asserting his First Amendment rights: Shelton hand-delivered his workplace harassment complaint to the Defendants; the Defendants admittedly knew Shelton created music and music videos; and the Defendants saw Shelton wearing a Black Lives Matter mask and instructed him he was not allowed to do so. Next, the Defendant clearly took an adverse action against Shelton when they fired him. Finally, there is a causal connection between Shelton's assertion of EEO harassment complaint rights and the termination of his employment: immediately after Shelton filed his workplace harassment complaint, the Defendants used Shelton's music and music videos as a pretext to terminate his employment. The Defendants' conduct in secretly vetting Shelton's music for First Amendment protection in an attempt to lessen their First Amendment liability, provides further evidence of this pretext. Finally, contrary to the Trial Court's decision, Shelton's Harassment Complaint included twenty-four allegations of race discrimination, one of which was substantiated. A reasonable juror, however, may find that one substantiated

complaint, more or even all of the complaints are probative of intentional discrimination.

The facts here are more than sufficient to support the inference that Shelton's employment would not have been terminated if he had not engaged in filing an internal EEO harassment complaint. The facts definitively show a causal connection between Shelton's free speech and his employment termination. The Trial Court's decision and Defendants' contentions otherwise are without merit and should be dismissed.

## VII. THE COURT SHOULD DECIDE WHETHER A TITLE VII PLAINTIFF MUST ESTABLISH A PRIMA FACIE CASE TO AVOID SUMMARY JUDGMENT

Alternatively, Plaintiff should not be <u>required</u> either to proceed under *McDonnell Douglas* or to establish a prima facie case. Some courts have abandoned the *McDonnell Douglas* methodology entirely, and at summary judgment inquire only whether the plaintiff has sufficient evidence to permit a reasonable jury to find the existence of an unlawful motive. Other courts, while permitting resort to the *McDonnell Douglas* method of analysis, accord to plaintiffs the alternative of merely establishing that a reasonable jury could find an unlawful motive, rendering largely beside the point any limitations on how a prima facie case might be established.

Justice Kavanaugh, while on the Court of Appeals, accurately described the problems that have been created by requiring proof of a prima facie case pursuant to

*McDonnell Douglas*. "Much ink has been spilled regarding the proper contours of the prima-facie-case aspect of *McDonnell Douglas*..... It has not benefited employees or employers; nor has it simplified or expedited court proceedings. In fact, it has done exactly the opposite, spawning enormous confusion and wasting litigant and judicial resources."

Justice Gorsuch expressed similar concerns while on the Tenth Circuit. *McDonnell Douglas* ... has proved of limited value [in discrimination cases].... [G]iven so many complications and qualifications [in the application of McDonnell Douglas methodology], more than a few keen legal minds have questioned whether the McDonnell Douglas game is worth the candle even in the Title VII context.... *Walton v. Powell*, 821 F.3rd 1204, 1210-11 (10th Cir. 2016) (opinion by Gorsuch, J.); see id. at 1212 (noting that "maddening maze" and "special and idiosyncratic (McDonnell Douglas) rules"); *Hinds v. Sprint/United Management Co*., 523 F.3rd 1187, 1202 (10th Cir.2008) (opinion of Gorsuch, J.) (noting criticism of the prima facie case requirement by then Judge Kavanaugh in Brady and by Judge Hartz in *Wells v. Colo. Dep't of Transp*., 325 F.3rd 1205, 1225-26 (10th Cir.2003) (Hartz, J., writing separately)).

The Sixth Circuit itself has noted these problems: [W]hile the burden-shifting analysis of *McDonnell Douglas* was created to assist in the presentation of a discrimination case, it often fails to fulfill its purpose. That failure is particularly

pronounced in the context of summary judgment where the burden shifting analysis can obfuscate the appropriate question—whether there exists a genuine issue of material fact. *Provenzano v. Lei Holdings, Inc.*, 663 F.3rd  806, 813 (6th  Cir. 2011).

Under these circumstances, it would be unwise for this Court to undertake to decide whether a necessary element of a legally required prima facie case without first determining whether Title VII plaintiffs are required at all to establish a prima facie case at the summary judgment stage. Sixth Circuit precedent conflicts with intervening Supreme Court authority, *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983, and should  no longer be controlling. See *United States v. Butts*, 40 F.4th 766, 769 n.3 (6th  Cir. 2022) *Smyer v. Kroger Ltd. P'ship I,* No. 22-3692, at *17 (6th  Cir. Mar. 8, 2024). Contrary to the Trial Court's holdings, a plaintiff is not required to support an inference of discrimination in that or any other particular manner. The ultimate issue at summary judgment remains whether a reasonable jury could conclude that the defendant acted with an unlawful purpose, not whether plaintiff has proffered some specific type of evidence which the court mistakenly believes is required by *McDonnell Douglas or this Circuit*, or which a judge may think would be especially persuasive.

### VIII. A DISCRIMINATION PLAINTIFF SHOULD NOT BE REQUIRED TO ESTABLISH A PRIMA FACIE CASE OR TO USE THE *MCDONNELL DOUGLAS* METHOD OF ANALYSIS

When a court requires a plaintiff defending a summary judgment motion to proceed in this manner, the consequences of this prima facie case and its components are dramatically different. When a plaintiff is unable to establish any element on that list, summary judgment will be granted. Any inculpatory proof that does not support a mandated element will—at the summary judgment stage—be legally irrelevant. A list of prima facie case elements, only intended by this Court as suggested types of evidence, becomes instead essential components of a Title VII claim.

The Sixth Circuit's prima facie standard for claims of discriminatory discipline has a similar feature. The Court of Appeals requires the plaintiff in such a case to prove that the employer treated more favorably a specific identified "similarly-situated" worker who was not a member of the protected group at issue. *Mitchell v. Toledo Hosp.,* 964 F. 2nd 577, 583 (6th Cir.1992). If there does not happen to be such a similarly situated worker with whom the plaintiff can be compared, the plaintiff's claim must be dismissed, which is precisely what occurred in *Mitchell*. The absence of that element of the required prima facie claim is fatal, regardless of what other evidence the plaintiff may have. An employer could engage in litigation-proof discrimination by firing a black worker for some particular type of alleged misconduct in which no white subordinate of the same supervisor at issue had ever

engaged. By insisting that a plaintiff at summary judgment establish a prima facie case, the Sixth Circuit has turned what the Supreme Court intended as a helpful procedural tool into a substantive narrowing of Title VII itself.

Several courts of appeals have correctly concluded that at the summary judgment stage, under *Aikens*, once a defendant offers a neutral explanation for the disputed conduct at issue, it is irrelevant whether the plaintiff established a prima facie case. The District of Columbia Circuit adopted that rule in a decision by then Judge Kavanaugh. In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin? *Brady*, 520 F.3rd at 494.

## CONCLUSION

This Court should reverse the District Court's entry of judgment for CMHA

and remand for further proceedings.

February 18, 2025

        Law Offices of Lawrence Mays
        By: /s/ Lawrence Mays
        Law Offices of Lawrence Mays
        29325 Chagrin Blvd., Suite 305
        Pepper Pike, Ohio 44122
        (216)208-1287; Fax (216) 831-9526
        E-Mail: Lawrence.Mays@lmayslaw.com
        Attorney for Plaintiff-Appellant

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), contains 11,193 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2022 in Times New Roman 14-point font.

Dated: February 18, 2025

*s/     Lawrence Mays*
Lawrence Mays
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 1 8 , 2025, an electronic copy of the Corrected Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

*s/ Lawrence Mays*
Lawrence Mays

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Plaintiff-Appellant hereby sets forth his designation of relevant District Court documents as required by Sixth Circuit Rule 30(g).

| Record Entry Number | Description of Document | Page ID# |
|---|---|---|
| 1 | Complaint | 1-25 |
| 4 | Amended Complaint | 54-77 |
| 13 | Second Amended Complaint | 162-189 |
| 15 | Answer to Second Amended Complaint | 207-238 |
| 19 | Motion for Partial Judgment on the Pleadings | 247-261 |
| 30 | Plaintiff's Opposition to Motion for Partial Judgment on Pleadings | 463-477 |
| 31 | Reply in Support of Motion for Partial Judgment of Pleadings | 478-489 |
| 34-17 | CMHA PD Rules and Regulations | 992-1009 |
| 34-18 | CMHA Policies and Procedures | 1010-1015 |
| 34-19 | Shelton Harassment in Workplace Complaint | 1016-1021 |
| 46-1 | Shelton v. CMHA Arbitration Vol 1 | 1480-1732 |
| 46-2 | Shelton v. CMHA Arbitration Vol 2 | 1733-1886 |
| 46-3 | Shelton v. CMHA Arbitration Vol 3 | 1887-2137 |
| 48 | Deposition of Erik Nielson | 2140-2245 |
| 50 | Deposition of Ronaye Steele | 2258-2268 |
| 51 | Deposition of Ronaye Steele-Rule 30(B) 6 | 2269-2308 |

| 53 | Expert Report of Erik Nielson | 2318-2328 |
|---|---|---|
| 58 | Plaintiff's Response in Opposition to Motion for Summary Judgment | 2514-2539 |
| 58-4 | Defendants' Admissions | 2571-2578 |
| 61 | Opinion and Order | 2801-2840 |
| 62 | Judgment | 2841 |
| 63 | Notice of Appeal | 2842-2843 |